[Cite as *Humbarger v. Cassidy*, 2024-Ohio-5361.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| ROBERT W. HUMBARGER III, | : | |
| Appellant, | : | CASE NO. CA2024-04-024 |
| | : | O P I N I O N |
| - vs - | | 11/12/2024 |
| | : | |
| TONIA L. CASSIDY, | : | |
| Appellee. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 22 DR 43567

The Law Offices of Jason A. Showen, LLC, and Jason A. Showen, for appellant.

Tonia L. Cassidy, pro se.

**PIPER, J.**

{¶1} Appellant, Robert W. Humbarger III ("Husband"), appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, granting a divorce between him and appellee, Tonia L. Cassidy ("Wife"), and dividing their property. Specifically, Husband challenges the trial court's division of a Jackson Roth IRA.

## I. Factual and Procedural Background

{¶2} Husband and Wife were married on November 19, 2018. After three years of marriage, the parties sought divorce, agreed they are incompatible, and stipulated to November 30, 2021 as the termination date of the marriage. No children were born issue of their marriage.

{¶3} On July 19, 2023, a final divorce hearing was held before the trial court's magistrate. At the hearing Husband established that when he entered into the marriage, he already possessed a Jackson Roth IRA with a value of $80,887.95 on November 19, 2018. Over the course of the marriage, Husband contributed $300 per month to the account, with a total contribution of $9,000 to the account during the marriage. The parties made no other contributions or withdrawals. By November 30, 2021, when the parties separated, the IRA was worth $161,953.22.

{¶4} Husband testified that Wife should only be awarded half of the total contributions made during the marriage ($4,500), plus any gains attributable to her half of the contributions. However, at the hearing, Husband provided no evidence or argument as to how to calculate the gains attributable to Wife's half of the marital contributions. When asked how the gains might be calculated, Husband testified "I have my theory but I'm not gonna give you an answer. I'm not an accountant." Husband then admitted he was not prepared to propose any figures. Wife, on the other hand, argued that she should receive one-half of all gains that accrued during the marriage, which was $40,532.64. Wife calculated the total IRA value at the time of separation to be $161,953.22, subtracted husband's premarital, separate IRA value of $80,887.95, which left remaining $81,065.27, and divided that amount in half.

{¶5} On September 12, 2023, the magistrate issued a decision recommending divorce. In the decision, the magistrate recommended, "As there was no expert evidence

presented regarding the passive increase of Husband's premarital funds, this Magistrate finds Wife shall receive fifty percent (50%) of Husband's Roth IRA between the dates of the parties' marriage, to wit: November 19, 2018, and November 30, 2021, (or the closest valuation dates thereto) plus or minus any market fluctuation until divided."

{¶6} On September 25, 2023, Husband filed objections to the magistrate's decision, reiterating his argument that Wife should only receive one half of the marital contributions to the IRA ($4,500), plus any gains attributable to that amount. Husband still offered no way of calculating and attributing the gains.

{¶7} Over five months after the evidentiary hearing, on January 11, 2024, Husband filed a memorandum in support of his objections to the magistrate's decision, and for the first time proposed two methods to divide the gains that accrued during the marriage. First, Husband proposed an algebraic formula to divide the IRA, in which he calculated that because he had made 95 percent of all contributions to the IRA, he should receive 95 percent of its final value ($153,855.56), and wife should receive five percent of its final value ($8,097.66). Second, in the alternative, Husband proposed that the parties should submit the complete record of IRA statements to an accountant. The accountant would then determine the effect that the market had on the $4,500 Wife contributed during the marriage.

{¶8} On March 12, 2024, the trial court ruled on Husband's objections to the magistrate's decision. The trial court found that Husband did not offer any testimony at the final divorce hearing on the passive growth of his premarital interest in the IRA, and he was not permitted to do so after the fact. Accordingly, the trial court overruled Husband's objections regarding the division of the IRA. On April 10, 2024, the trial court journalized an Entry and Final Decree and Judgment of Divorce, ordering that Wife receive 50 percent of the IRA gains acquired between November 19, 2019 and November

30, 2021 ($40,532.64, plus any market fluctuation until divided).

{¶9}   On appeal, Husband raises one assignment of error for our review.

**II. Legal Analysis**

{¶10}  Assignment of Error:

THE TRIAL COURT ERRED BY INEQUITABLY AWARDING APPELLEE 50% OF THE PASSIVE EARNINGS ON APPELLANT'S PREMARITAL SEPARATE PROPERTY.

{¶11}  In his sole assignment of error, Husband asserts that the trial court erred when it awarded Wife 50 percent of the IRA gains acquired during the marriage. In doing so, Husband argues that Wife received an inequitable 900 percent growth on her half of the contributions made during the marriage. Husband argues Wife was only entitled to $4,500 plus an undetermined amount of gains attributable to that $4,500. Alternatively, Husband argues that the trial court could have awarded Wife an amount calculated by his algebraic formula or by an accountant, as proposed in his January 2024 memorandum. We disagree with Husband's arguments.

{¶12}  In divorce proceedings, the Revised Code requires the domestic relations court to determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). After making this determination, the court then must equitably divide the marital property and separate property between the spouses in accordance with the provisions of R.C. 3105.171. *Id.*

{¶13}  After the domestic relations court has classified property as marital or separate, it possesses broad discretion to determine an equitable and fair division of the marital estate. *Cherry v. Cherry*, 66 Ohio St.2d 348, 355 (1981). This court will not reverse a domestic relations court's decision regarding the division of property in a divorce proceeding absent an abuse of discretion. *Id.* An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v.*

- 4 -

*Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶14} "Marital property" is defined as "[a]ll real and personal property that currently is owned by either or both of the spouses . . . and that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i). "'Marital property' does not include any separate property." R.C. 3105.171(A)(3)(b). Separate property includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage" and "passive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(a)(ii) and (iii).

{¶15} "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of evidence, to trace the asset to separate property. *Peck v. Peck*, 96 Ohio App.3d 731, 734 (12th Dist.1994). "Traceability presents a question of fact and we ordinarily defer to the trial court as the factfinder." *Bauer v. Bauer*, 2020-Ohio-425 ¶ 38 (12th Dist.), citing *Maloney v. Maloney*, 2005-Ohio-1368, ¶ 23 (2d Dist.).

{¶16} Here, the IRA gained $81,065.27 in value during the marriage. Husband asserts that the gains on the IRA that are attributable to his premarital contributions should be classified as his separate property. Nevertheless, Husband failed to present any evidence at the evidentiary hearing tracing any specific portion of the gains to his premarital property (i.e. the $80,887.95 he already had in the IRA when he entered the marriage). Instead, Husband only testified that Wife should receive 50 percent of the contributions made to the IRA during the marriage, being $4,500, plus an undetermined amount of gains attributable to that $4,500. Yet, at the evidentiary hearing, Husband

made no proposal of what those gains on the $4,500 might be, or the methodology to calculate them.

{¶17} When asked at the evidentiary hearing how those gains might be calculated, Husband admitted "I have my theory but I'm not gonna give you an answer. I'm not an accountant." Husband did not give a specific figure. There was no evidence in the record to determine what IRA gains were attributable to Wife's contributions versus Husband's contributions. The credibility and reasonableness of proposed valuations are ordinarily tested at evidentiary hearings with cross-examination and counter proposals. Because Husband proposed no methodology at the hearing, Wife never had the opportunity to cross-examine him on his methodology and the calculation he reached.

{¶18} This court has previously explained that "The starting point for allocating marital property is an equal division of both marital assets and marital debts." *Doty v. Doty*, 2023-Ohio-2519, ¶ 37 (12th Dist.). In the absence of any evidence tracing any specific portion of gains to Husband's separate property, the trial court reasonably decided to divide all gains during the marriage equally.

{¶19} Husband also argues that the trial court could have adopted one of the suggestions he proposed in his January 2024 memorandum. However, Husband did not make these suggestions or give testimony supporting his suggestions until after the final divorce hearing. Civ.R. 53(D)(4)(d) states that when a trial court reviews objections to a magistrate's decision "the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." Here, the trial court correctly found that Husband could have proposed a realistic figure to the magistrate, at the final divorce hearing, to represent the passive growth of his premarital contributions to the IRA. He chose not to. Therefore, the trial court correctly refused to

consider Husband's late proposals to use an algebraic formula or to employ an accountant. Husband is not permitted to take a wait-and-see approach with the magistrate's decision, and only propose other calculations afterward when he is dissatisfied.

### III. Conclusion

**{¶20}** We find the trial court did not err when it awarded Wife 50 percent of the gains made in the IRA during the marriage. Husband's sole assignment of error is overruled.

**{¶21}** Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.